1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| RAYMOND REVIERE, | 1:11-cv-00483-AWI-DLB (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECCOMMENDING GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| M. PHILLIPS, et al., | (ECF No. 42) |
| Defendants. | THIRTY-DAY OBJECTION PERIOD |

16

17    Plaintiff Raymond Reviere ("Plaintiff"), a state prisoner proceeding pro se, filed this civil

18 rights action pursuant to 42 U.S.C. § 1983 on March 22, 2011.  Plaintiff filed a Second Amended

19 Complaint ("FAC") on October 25, 2011.  ECF No. 10.  On February 3, 2012, the Court found

20 cognizable claims against for (1) use of excessive force in violation of the Eighth Amendment

21 against Defendants Herrera and Matus; and (2) violation of the Eighth Amendment based on

22 Plaintiff's conditions of confinement against Defendants Phillips, Herrera and Matus.  ECF No.

23
24 11.

25    On September 13, 2013, Defendants filed this Motion for Summary Judgment.[1]  ECF No.

26 42.  Plaintiff opposed the motion on October 11, 2013, and Defendant filed his reply on October

27 ───────────────
[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

28

18, 2013.  ECF Nos. 45 & 47.  The motion is deemed submitted pursuant to Local Rule 230(*l*).

## I.   LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

1   'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

2   **II.     UNDISPUTED FACTS**

3           Plaintiff Raymond Reviere (J-10293) is a prisoner in the custody of the California

4   Department of Corrections and Rehabilitation ("CDCR"). (Matus Decl. ¶ 2.)  Defendants Matus

5   and Herrera are correctional officers, and Defendant Phillips is a correctional lieutenant,

6   employed by CDCR. (Matus Decl. ¶ 1; Herrera Decl. ¶ 1; Phillips Decl. ¶ 1.)  On December 21,

7   2009, Plaintiff went to the door of the library located on the patio at Facility A in Kern Valley

8   State Prison (KVSP) and waited for the door to be unlocked. (Reviere Depo. 20:6–19.)  There

9   were two inmate library workers waiting to get through the nearby gate to the patio. (Reviere

10  Depo. 20:23–25, 30:10–19.)   After about three to five minutes, Plaintiff yelled down to

11  Defendant Matus that there were two inmate workers trying to get in through the gate. Defendant

12  Matus signaled for Plaintiff to come down, and Defendant Matus told him in a regular speaking

13  voice, "When you start wearing a green uniform with three stripes on the shoulder, then you can

14  tell me how to do my job." (Reviere Depo. 22:22–23:25, 26:21–24.)

15          Plaintiff returned to the library door, and two to three minutes later, an officer manning

16  the gun tower called down to Defendant Matus to pat down the inmate library workers. (Reviere

17  Depo. 29:2–8.)  Plaintiff remarked to the officer in the gun tower, "He ain't going to hear you

18  because you don't have three stripes on your shoulder." (Reviere Depo. 29:9–11.)  The officer in

19  the gun tower and the two inmate library workers were each about ten to fifteen feet away from

20  Plaintiff. (Reviere Depo. 29:22–24, 30:10–19.)   Plaintiff's remark was sarcastic; was not

21  intended to accomplish anything; could be perceived as disrespectful; and could be heard by

22  Defendant Matus, the gun tower officer, and the two inmate library workers. (Reviere Depo.

23  29:13–31:25, 34:1–35:16; Matus Decl. ¶ 5.)  Plaintiff appeared to Defendants Matus and Herrera

24

25

26

27

28

to be upset, and they perceived the other inmates to be reacting to Plaintiff's conduct and attitude. (Matus Decl. ¶¶ 3–5; Herrera Decl. ¶¶ 2–3.)

Defendants Matus and Herrera decided to escort Plaintiff to the adjacent Program Office, which was approximately thirty to forty feet away, to place Plaintiff in a holding cell until he calmed down. (Matus Decl. ¶¶ 7 & 9; Herrera Decl. ¶¶ 4 & 6.)  Defendants Matus and Herrera approached Plaintiff; they ordered him to turn around; and Defendant Herrera put handcuffs on his wrists. (Reviere Depo. 44:22–41:5; Matus Decl. ¶ 8; Herrera Decl. ¶ 5.)  For the purpose of safety and security, it is standard procedure to put handcuffs on prisoners when escorting them to the Program Office as a result of engaging in disruptive behavior. (Matus Decl. ¶ 9; Herrera Decl. ¶ 6.)  Defendant Herrera's putting the handcuffs on Plaintiff was "uneventful," and Plaintiff did not complain of any discomfort or tightness before they were en route to the nearby Program Office.  (Reviere Depo. 42:3–43:21; Matus Decl. ¶ 8; Herrera Decl. ¶ 5.)

While walking to the program office, Plaintiff told Defendant Herrera that the handcuffs were too tight and were making his hands numb. They continued to the Program Office, where Defendants Herrera and Matus talked to Defendant Phillips for "a few minutes"—"It was relatively quick." (Reviere Depo. 42:18–23, 43:24–44:13, 49:16–22.)  Matus informed Phillips that Reviere was acting in an unruly manner, and requested authorization to place Reviere in a holding cell to give him an opportunity to calm down in lieu of writing up a Rules Violation Report. Phillips approved the request. (Matus Decl. ¶ 10; Phillips Decl. ¶ 3.)

After speaking with Defendant Phillips, Defendants Matus and Herrera took Plaintiff to a holding-cell room within the office and ordered Plaintiff to turn around and allow the handcuffs to be removed.  (Reviere Depo. 50:21–51:7.)  Plaintiff refused to allow the handcuffs to be removed until, after about 15 minutes of "yelling and hollering," with no use of force, Plaintiff walked into the holding cell under his own power and allowed the cuffs to be removed through

the slot in the door. (Reviere Depo. 50:16–20, 54:14–55:1, 56:8–19, 58:15–23, 60:24–61:9, 62:11–17.)   Plaintiff never consulted a doctor or obtained any examination, diagnosis, or treatment relating to the use of the handcuffs, and Plaintiff has no information about whether he would have had more than transitory discomfort if he had allowed Defendants Matus and Herrera to remove the handcuffs when they tried a few minutes after reaching the Program Office. (Reviere Depo. 45:17–25, 57:20–58:8.)   Plaintiff had been in holding cells innumerable times before and considered it "one of those routine things" incident to life in prison. (Reviere Depo. 48:24–49:10.)

A holding cell is a single-person cell made of wire mesh on all four sides, including the door. (Phillips Decl. ¶ 5; Reviere Depo. 61:13–62:14.)   Under CDCR policy, it is an appropriate use of a holding cell to temporarily separate an inmate, who is disruptive or whose presence in an area threatens the safety and security of the institution, from other inmates and staff. (Phillips Decl. ¶ 6.)   The procedure for use of holding cells in December 2009, called for the staff that placed a prisoner in a holding cell to log that placement and either conduct periodic security/welfare checks or to notify the Facility Sergeant of the need to assign a custody staff member to conduct the checks. (Phillips Decl. ¶ 7.)

The holding-cell area opens into the Program Office and has a window in the door; the Program Office is constantly manned throughout the day, except for brief occasions of generally no more than a few minutes if the officers on duty are required to attend to some task outside of the office; and inmates who call out from the holding-cell area can be, and are, easily heard by staff located in the Program Office even with the door closed. (Phillips Decl. ¶ 9.)   Plaintiff never called out to the staff in the adjoining program office or otherwise tried to attract anyone's attention, and he never asked for water or for access to a toilet. (Reviere Depo. 64:14–24, 76:3–9; Matus Decl. ¶ 14; Herrera Decl. ¶ 11; Phillips Decl. ¶ 12.)   Within about a half hour of being

in the holding cell, Plaintiff felt the need to urinate; and within about an hour of being in the cell, Plaintiff urinated on the floor beneath his feet. He was wearing either boots or shoes and did not get any urine on his footwear or clothing. (Reviere Depo. 64:1–13, 66:2–22.)  One-and-a-half to two hours after urinating, Plaintiff sat down on the floor without looking to see what he was sitting in; without trying to dry the area; and without trying to get anyone's attention. (Reviere Depo. 68:3–71:8.)  At about 5:15 or 5:30 p.m., when Plaintiff was missing for the regular count, correctional staff located Plaintiff in the holding cell and released him back to his housing unit. (Reviere Depo. 11:23–12:3, 81:18–82:21.)  Plaintiff suffered no physical harm from his time in the holding cell, apart from the discomfort associated with a full bladder before urinating and pain in his back and legs from standing before he sat down. (Reviere Depo. 65:4–20, 71:1–4, 73:22–74:4.)

## III.   DISCUSSION

### A.   Excessive Force

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order to be held liable, each defendant must have personally participated in the deprivation of the plaintiff's rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949 (2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the

relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7.

A prison official's use of force to maliciously and sadistically cause harm violates the contemporary standards of decency. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010). However, "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action." *Gaddy*, 130 S. Ct. at 1179 (quoting *Hudson*, 503 U.S. at 9). Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Whitley*, 475 U.S. at 321; accord *Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir. 2003). Although the extent of the injury is relevant, the inmate does not need to sustain serious injury. *Hudson*, 503 U.S. at 7; *Wilkins*, 130 S. Ct. at 1178-79. The Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimus uses of physical force. *Hudson*, 503 U.S. at 9-10.

### 1.   Defendants' Argument

Defendants argue that they are entitled to summary judgment because the undisputed facts show that their use of tight handcuffs did not constitute excessive force, in violation of the Eighth Amendment. As a matter of law, Defendant Herrera's putting handcuffs on Plaintiff in a manner that Plaintiff acknowledged was "uneventful" did not constitute cruel and unusual punishment. Defendant Herrera did not attempt to, and is not aware that he did, put the handcuffs on in an unusually tight manner. Nothing in Plaintiff's conduct or demeanor suggested that the handcuffs were on too tight and Plaintiff did not complain about the handcuffs until he was en route to the immediately adjacent Program Office. Defendants Herrera and Matus continued to the Program Office, where they attempted to remove the handcuffs within what Plaintiff describes as just "a few minutes"—"It was relatively quick."

Plaintiff actively refused to allow Defendants Herrera and Matus to remove the

handcuffs for fifteen minutes.  Plaintiff alleges that allowing the handcuffs to be removed would have enabled Defendants to assault him, however, Defendants undisputedly used no force against Plaintiff despite his "yelling and hollering" profanities at them while refusing to comply with orders to remove the handcuffs.  There is no evidence that they handcuffs were intolerably tight or that they were even tight enough to cause more than transitory discomfort for the "few minutes" before Defendants attempted to remove the handcuffs.  Moreover, Defendant Matus had no duty to intervene in Defendant Herrera's handcuffing of Plaintiff, given that Plaintiff never complained of any actual pain and Defendants tried to remove the handcuffs within a few minutes of putting them on.  Thus, the Court should grant summary judgment on the issue of excessive force, in violation of the Eighth Amendment.

## 2.    Plaintiff's Argument

Plaintiff argues that Defendants used excessive force against him because there was no good-faith effort to maintain/restore discipline and because the pain inflicted on him was unnecessary.  The authorities cited by Defendants in support of their de minimus use of force argument are distinguishable from this case because there was either probable cause to effect an arrest of the prisoner was being transported and there was a legitimate purpose for handcuffing. In contrast, Plaintiff argues that Defendants had no legitimate reason to handcuff him.  Although Plaintiff admits that he made the sarcastic remark about Defendant Matus, there was no disruptive situation and he was handcuffed and placed in the holding cell as punishment.

The record demonstrates an exaggerated response to the situation.  The officer manning the gun tower witnessed the whole situation and Defendants failed to bring this witness forward, which gives rise to the inference that the witness' testimony would have been unfavorable. Additionally, CDCR's regulations mandate the documentation of disruptive/disobedient behavior in a rules violation report.  Defendant Matus made no allegation against Plaintiff until this lawsuit was filed.  From this evidence, a fact finder could conclude that Plaintiff was not disruptive or disobedient to Defendant Matus.  Additionally, a fact finder could conclude that Defendants placed Plaintiff in the holding cell as punishment, which violates CDCR policy.

1    Next, Plaintiff argues that Defendants delay in removing the handcuffs was not

2    attributable to him.  Although Plaintiff would not allow the handcuffs to be removed until he was

3    in the holding cell, CDCR policy required Defendants to leave the handcuffs in place until

4    Plaintiff he was inside the holding cell.  Defendants were obligated to remove the handcuffs

5    immediately following his complaint of pain.  Accordingly, the Court should deny Defendants'

6    motion for summary judgment as to the excessive force claim.

7        **3.**    **Findings**

8        In general, in cases where tight handcuffing was found to constitute excessive force, the

9    plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs,

10   had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by

11   the defendant.[2] *Shaw v. City of Redondo Beach*, 2005 WL 6117549, at * 7 (C.D.Cal.2005) ("In

12   those tight handcuffing cases in which courts have found excessive force, the arrestee was either

13   in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more

14   severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs

15   loosened or released, and/or alleged other forms of abusive conduct in conjunction with the tight

16   handcuffing.").

17       Here, accepting plaintiff's version of the events as true, the undisputed evidence shows

18

19   [2] *See, e.g., Wall v. County of Orange*, 364 F.3d 1107, 1109-10, 1112 (9th Cir.2004) (no qualified immunity on
     Fourth Amendment claim when officer tightly handcuffed arrestee, threw him into patrol car, left him there for 20
20   minutes in 80 to 90 degree heat, and afterwards disregarded requests to loosen handcuffs, which damaged arrestee's
     wrists so as to force him to give up his profession as a dentist*); Meredith v. Erath*, 342 F.3d 1057, 1063-64 (9th
21   Cir.2003) (no qualified immunity on Fourth Amendment claim when IRS agent investigating organization for tax
     crimes tightly handcuffed plaintiff, who resided on the premises but had no connection with the organization, and
22   refused to loosen handcuffs for 30 minutes despite her complaints); *LaLonde v. County v. Riverside*, 204 F.3d 947,
     960 (9th Cir.2000) (triable issue of fact as to Fourth Amendment violation when officers disregarded arrestee's
23   complaints that his handcuffs were too tight and deliberately permitted pepper spray to remain on his face);
     *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322-23 (9th Cir.1995) (the Ninth Circuit found a triable issue,
24   although deeming the question "a close one," when officers disregarded for 30 to 45 minutes requests to loosen
     handcuffs of dialysis patient who had informed them of his condition, and handcuffs caused swelling and numbness
25   in hands lasting nine months); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir.1993) (no qualified immunity on
     Fourth Amendment claim when officer refused to loosen handcuffs of 67-year old arrestee, who was a recent stroke
26   victim and whose handcuffs were so tight that they left bruises lasting several weeks); *Gregory v. Adams*, 2008 WL
     486013 (E.D.Cal.2008) (triable issue of fact regarding whether tight handcuffing violated Eighth Amendment when
27   defendant handcuffed inmate, who was wearing a wrist brace at the time due to his arthritis and tendinitis, and kept
     inmate in handcuffs for five hours despite inmate's pleas that he was in pain); *Buckley v. Evans*, 2007 WL 2900173,
28   at * 8 (E.D.Cal.2007) (tight handcuffing not de minimis when inmate was kept in handcuffs and leg irons for almost
     five hours and they were not loosened when he complained that they were too tight);

the following: On December 21, 2009, Defendants Matus and Herrera approached Plaintiff; they ordered him to turn around; and Defendant Herrera put handcuffs on his wrists. (Reviere Depo. 44:22–41:5; Matus Decl. ¶ 8; Herrera Decl. ¶ 5.)  Defendant Herrera's putting the handcuffs on Plaintiff was "uneventful," and Plaintiff did not complain of any discomfort or tightness before they were en route to the nearby Program Office.  (Reviere Depo. 42:3–43:21; Matus Decl. ¶ 8; Herrera Decl. ¶ 5.)

While walking to the program office, Plaintiff told Defendant Herrera that the handcuffs were too tight and were making his hands numb. They continued to the Program Office, where Defendants Herrera and Matus talked to Defendant Phillips for "a few minutes"—"It was relatively quick." (Reviere Depo. 42:18–23, 43:24–44:13, 49:16–22.)   After speaking with Defendant Phillips, Defendants Matus and Herrera took Plaintiff to a holding-cell room within the office and ordered Plaintiff to turn around and allow the handcuffs to be removed.  (Reviere Depo. 50:21–51:7.)  Plaintiff refused to allow the handcuffs to be removed until, after about 15 minutes of "yelling and hollering," with no use of force, Plaintiff walked into the holding cell under his own power and allowed the cuffs to be removed through the slot in the door. (Reviere Depo. 50:16–20, 54:14–55:1, 56:8–19, 58:15–23, 60:24–61:9, 62:11–17.)   Plaintiff never consulted a doctor or obtained any examination, diagnosis, or treatment relating to the use of the handcuffs, and Plaintiff has no information about whether he would have had more than transitory discomfort if he had allowed Defendants Matus and Herrera to remove the handcuffs when they tried a few minutes after reaching the Program Office. (Reviere Depo. 45:17–25, 57:20–58:8.)

Here, the Court finds that Defendants use of handcuffs did not rise to the level of excessive force, in violation of the Eighth Amendment.  *See Hudson,* 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional regoginition de minimus uses of physical force, proved the use of force is not of a sort 'repugnant to the conscience of mankind.'").  Plaintiff did not notify Defendants that the handcuffs were too tight when they were first placed on his wrists.  Once Plaintiff did notify Defendants, he waited only a few minutes before Defendants attempted to remove Plaintiff's

handcuffs.  Moreover, there is no evidence that Plaintiff suffered any physical injury as a result of the handcuffing.

In conclusion, Plaintiff has failed to meet his burden to establish that a genuine dispute as to any material fact exists as to the issue of excessive force.  *Matsushita*, 475 U.S. at 586. Accordingly, Defendants are entitled to judgment as a matter of law on the issue of excessive force, in violation of the Eighth Amendment.

**B.**     **Conditions and Confinement**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement."  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'"  *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)).  "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue. . . ."  *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995 (1992).  "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim."  *Hudson*, 503 U.S. at 9 (citation omitted).  With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Id.* (quotations and citations omitted).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm."  *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation

must be, in objective terms, "sufficiently serious. . . ." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety. . . ." *Farmer*, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128.

### 1.   Defendants' Argument

Defendants argue that they are entitled to summary judgment because Plaintiff's containment for five hours without access to water or a bathroom did not constitute unconstitutional conditions and confinement, in violation of the Eighth Amendment. Temporary deprivations of water and sanitation do not pose a serious threat of harm to the prisoner. Plaintiff never called out to the adjacent Program Office for water or a bathroom.

There is no evidence that five hours without water was a threat to Plaintiff's safety or an offense against the evolving standards of decency that mark the progress of a maturing society. Plaintiff himself attributes no physical harm to having to wait for a drink of water. Moreover, any discomfort from lack of a toilet was short-lived because Plaintiff urinated on the floor within a half hour of feeling the need. Although Plaintiff eventually sat on the wet floor, he made no effort to direct his urine out of the mesh-wire cell, and made no effort to dry the floor. Plaintiff

was not forced to sit in his urine.  Furthermore, wet pants do not qualify as cruel and unusual punishment.

Additionally, Defendants argue that they lacked a sufficiently culpable state of mind for an Eighth Amendment violation.  Defendants placed Plaintiff in a holding cell for the legitimate penological purpose to prevent his disruptive conduct from escalating.  Even though Plaintiff was inadvertently left in the cell longer than Defendants intended, none of them had any reason to believe that Plaintiff had any safety, medical, or other concern with being placed in a holding cell.  Accordingly, the Court should grant summary judgment in favor of Defendants Phillips, Herrera, and Matus on the claim for unconstitutional conditions and confinement.

## 2.    Plaintiff's Argument

Plaintiff argues that Defendants placed him in unconstitutional conditions of confinement by leaving him without access to water or sanitation for several hours, in violation of the Eighth Amendment. Plaintiff argues that the lack of sanitation in this case was serious enough to constitute an infliction of pain within the meaning of the Eighth Amendment.  Within a half hour of being placed in the holding cell, Plaintiff needed to urinate, and after another half hour, Plaintiff urinated on the floor.  After another half hour, Plaintiff began experiencing painful leg cramps and pain in his lower back from the stress of standing in one position, so he sat on the floor in his own urine.  Plaintiff argues that providing access to sanitation is part of a correctional officer's job.  Defendant Matus instructed Plaintiff not to tell him how to do his job, which is why Plaintiff did not call out to request access to a toilet.

Next, Plaintiff contests Defendants claim that Plaintiff made no attempt to direct his urine outside of the holding cell.  Plaintiff typically has little pressure behind his urine because he suffers from "BPH."  This symptom was exacerbated by his attempt to retain his urine, which resulted in a painful and prolonged urination process because the urine only came out in dribbles.

Thus, Plaintiff was unable to direct his urination in any direction except down.  The holding cell was the size of a phone booth and in practical terms there was no one side.

Finally, Plaintiff argues that Defendants violated CDCR policy by failing to offer Plaintiff access to a toilet at intervals not exceeding one hour.  Since Plaintiff did not urinate until he was in the cell for one hour, Plaintiff would not have had to urinate on the floor if Defendants had followed CDCR policy.  Defendants were each aware that the holding cell was not equipped with a toilet, however, none of them took any steps to ensure that Plaintiff had access to a toilet.  Thus, the Court should deny Defendants' motion for summary judgment on the claim of unconstitutional conditions and confinement.

**3.    Findings**

Courts have found that substantial deprivations of adequate drinking water, shelter from extreme heat or cold, food, and sanitation for a significant period of time are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See, e.g., Johnson*, 217 F.3d 726, 732–33 (9th Cir. 2000) (finding that prisoners asserted a sufficiently serious deprivation by alleging that prison officials held them outside without access to adequate shelter, water, food, or sanitation for four days when the temperatures ranged from 70 to 94 degrees and for 17 hours in sub-freezing temperatures); *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir.1995) (noting that a "lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment"). However, temporary deprivations of sanitation, water, and shelter that last only a short amount of time and do not pose a serious threat of harm to the prisoner do not give rise to deprivations that are sufficiently serious to support an Eighth Amendment claim. *See Minifield v. Butikofer*, 298 F.Supp.2d 900, 904 (N.D.Cal.2004) (finding that a five hour deprivation of water did not rise to the level of an Eighth Amendment violation); *Kanvick v. Nevada*, No. 3:08–CV–00397–ECR–VPC, 2010 WL 2162324, at *5–6 (D.Nev.

Apr.27, 2010) (noting "that a temporary deprivation of access to toilets, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation" and holding that deprivation of access to restrooms lasting up to two hours was not sufficient to support an Eighth Amendment claim); *see also Hernandez v. Battaglia*, 673 F.Supp.2d 673, 676–78 (N.D.Ill.2009) (finding that deprivations were not sufficiently serious where prisoners were detained in a prison yard while handcuffed without access to water, food, or toilets in 80 to 85 degree temperatures for up to five hours during a search of living quarters); *Curiel v. Stigler*, No. 06 C 5880, 2008 WL 904894, at *4–6 (N.D.Ill. Mar.31, 2008) (same).

Here, the Court finds that Plaintiff did not suffer substantial deprivations of access to water or sanitation.  Assuming the facts most favorable to Plaintiff, even if a request for water or to use the bathroom would have been futile, remaining in the holding cell for up to five hours was not extreme deprivation.  While Plaintiff was not given access to water or sanitation for up to five hours, these deprivations were temporary and the duration was not such that it posed a threat of serious physical harm or illness. *See Minifield*, 298 F.Supp.2d at 904 (finding that a five hour deprivation of water did not rise to the level of an Eighth Amendment violation); *Kanvick*, 2010 WL 2162324, at *5–6 (noting that temporary deprivation of access to restrooms does not give rise to an Eighth Amendment claim in the absence of physical injury or risk of contamination).

In conclusion, Plaintiff has failed to meet his burden to establish that a genuine dispute as to any material fact exists as to the issue of unconstitutional conditions and confinement. *Matsushita*, 475 U.S. at 586.  Accordingly, Defendants are entitled to judgment as a matter of law on the issue of conditions and confinement, in violation of the Eighth Amendment.

///

### C.   <u>Qualified Immunity</u>

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. *Saucier*, 533 U.S. at 200. A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Tortu v. Las Vegas Metro. Police Dep't.* 556 F.3d 1075, 1085 (9th Cir. 2009)). In resolving the issue of qualified immunity, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

Defendants argue that they are entitled to qualified immunity. Because the Court grants Defendants' motion based on the foregoing analysis, the Court does not reach Defendants' argument that they are entitled to qualified immunity.

## IV.   CONCLUSION AND RECOMMENDATION

In conclusion, there is no evidence that Defendants used excessive force against Plaintiff or subjected him to unconstitutional conditions of confinement. Accordingly, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on September 13, 2013, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 21, 2014**                     /s/ *Dennis L. Beck*
                                                    UNITED STATES MAGISTRATE JUDGE